IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No: ___-civ-___-___

**HARRY SARGEANT, III,**

**Plaintiff,**

v.

**MAROIL TRADING, INC.,
SEA PIONEER SHIPPING CORPORATION,**
and
**WILMER RUPERTI PEDROMO,**
individually,

**Defendants.**
_____/   **JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

Plaintiff, Harry Sargeant, III, ("HS3") files this Complaint against Defendants, Maroil Trading Inc. ("Maroil"), Sea Pioneer Shipping Corporation ("SPSC"), and Wilmer Ruperti Perdomo, also known as Wilmer Ruperti ("Ruperti") for fraud, aiding and abetting fraud, concealment, unjust enrichment, civil conspiracy, and negligent misrepresentation and states as follows:

## SUMMARY OF THE ACTION

1. This matter involves the assertion of civil fraud and other claims against the Defendants. The Plaintiff, has been deprived and defrauded out of more than $40 million by the Defendants' conduct. The claims arise out of HS3's ownership interest in Latin American Investments, Ltd. ("LAIL").

2. The Defendants and LAIL had several joint ventures with each other to carry out shipping contracts with PDVSA Petroleo, S.A. ("PDVSA").

1

3. PDVSA failed to perform on the shipping contracts, and LAIL and the Defendants asserted claims against PDVSA in 2011 and 2012.

4. In 2014, LAIL nominated the defendants to negotiate a settlement with PDVSA with respect to all claims LAIL had asserted against PDVSA. PDVSA agreed to settle all claims on behalf of the Defendants and LAIL in December 2014 (the "PDVSA Settlement"). Unbeknownst to HS3, the Defendants secretly agreed with PDVSA to settle all claims on behalf of LAIL in December 2014 (the "PDVSA Settlement"). The Defendants then arranged for the proceeds of the settlement, approximately $177.6 million (the "PDVSA Proceeds"), to be paid not to LAIL, but rather to themselves and others.

5. As of and from December 2014, LAIL was entitled to receive the PDVSA Proceeds. As of and from December 2014, the PDVSA Proceeds constituted a valuable, current asset of LAIL. But the Defendants' fraudulent concealment and misappropriation deprived LAIL and HS3, of the PDVSA Proceeds.

6. The Defendants actively concealed from HS3's agents the PDVSA Settlement and the misappropriation of the PDVSA Proceeds. At no point in time before March 2017 did HS3 learn of the PDVSA Settlement, the PDVSA Proceeds, and/or the Defendants' fraudulent conduct.

## THE PARTIES

7. HS3 is a citizen and resident of Palm Beach County, Florida, United States of America. At all times herein material, HS3 owned a 25% interest in LAIL.

8. Maroil is a company incorporated under the laws of Panama and headquartered out of World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama City, Republic of Panama. Maroil's registered Resident Agents are Arias, Fabrega & Fabrega (AF&F), whose

address is PH ARIFA, 10th Floor, West Boulevard, Santa Maria Business District, P.O. Box 0816-01098, Panama, Republic of Panama.

9. SPSC is a company incorporated under the laws of Panama and headquartered out of World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama City, Republic of Panama.

10. Ruperti is a Venezuelan national whose last known residence was Edificio Aldaba, 8TA Transversal de los Palos Grandes, Municipo Chacao, Venezuela. Ruperti controls both Maroil and SPSC.

11. Ruperti has substantial and not isolated contacts within the Southern District of Florida, including significant business contacts. Ruperti also owns, or has owned at relevant times herein, real estate in the Southern District of Florida. Ruperti also controlled at least one Florida company, Ruperti Management, LLC, at the time of the shipping contracts between LAIL and Ruperti's companies, which are more fully described below.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action arising under Florida law and complete diversity of citizenship exists between the Plaintiff and the Defendants. Specifically, Plaintiff, is a citizen of Florida and Defendants are all citizens of foreign nations. No Defendant is domiciled in Florida.

13. The amount in controversy in this suit exceeds $75,000 exclusive of interests and costs.

14. This Court has jurisdiction over the Defendants because Defendants' conduct as set forth herein harmed, and were aimed at, Plaintiff, who resides, conducts business, and relied on the misrepresentations at issue in Florida. Moreover, Ruperti has substantial and not isolated

3

contacts in the Southern District of Florida relevant to the allegations herein, and Defendants, collectively, engaged in conduct in the Southern District of Florida relevant to the transactions and occurrences set forth herein.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action.

## LAIL and the PDVSA Contracts

16. LAIL is incorporated in the Isle of Man.  At all times herein material, LAIL was owned by HS3 (25%), and Harry Sargeant, Jr., Daniel Sargeant, and James Sargeant (collectively 75%), who at all times herein material, were Florida residents and conducted LAIL business out of an office in Florida.

17. At all times herein material, HS3 was the primary interlocutor between LAIL, its lenders, and its operating subsidiaries.  HS3 was responsible for coordinating all commercial activities of LAIL and its operating subsidiaries, including without limitation as regards to matters associated with the Defendants.

18. Prior to the Defendants' fraud, LAIL had entered into certain shipping contracts with PDVSA involving four tanker ships – *Leander*, *Hero 1*, *Polar*, and *Alloro*.  LAIL and Defendant Maroil were equal shareholders in joint venture companies that controlled the tanker ships ("JV Companies").  For *Leander* and *Hero 1*, a third company, Oceanic Trans Shipping, Est. ("OTS"), was also an equal shareholder in the respective joint venture companies.  The tanker ships were on charter to PDVSA through the Defendants or companies controlled by the Defendants.

19. Disputes with PDVSA over the shipping contracts arose. In August 2011, two of the JV Companies, for the *Leander* and *Hero 1*, filed an arbitration claim for $106.5 million against PDVSA for failure to nominate or perform the minimum number of shipments required under contracts of affreightment held with PDVSA (the "First PDVSA Arbitration").

20. In August 2012, the remaining JV Companies, *Alloro* and *Polar*, and companies related to two more tanker ships controlled in part by Ruperti, *General Zamora* and *Alimirante Brion*, wrote a separate claim letter to PDVSA for $580 million.

21. In April 2014, Commerzbank Aktiengesellschaft ("Commerzbank"), the bank holding the mortgage and other security for *Leander*, *Hero 1*, and *Polar*, filed its own arbitration as assignee under some of the PDVSA contracts (the "Second PDVSA Arbitration").

22. Because PDVSA had not formally responded to any of the claims against it, negotiation was seen as the only way to secure any value from the claims against PDVSA. In May 2014, LAIL authorized the Defendants to pursue a settlement with PDVSA related to the First PDVSA Arbitration.

23. In December 2014, PDVSA and the Defendants held secret settlement talks in Caracas, Venezuela. PDVSA and the Defendants agreed during that meeting to settlement of all of Defendants' and LAIL's outstanding claims, the First and Second PDVSA Arbitrations, and the August 2012 letter of claim. The settlement agreement with PDVSA was apportioned into a $30 million payment to settle the First and Second Arbitrations, and a $230 million payment to settle the claims related to the August 2012 claim letter.

24. Pursuant to the settlement of the First and Second PDVSA Arbitrations, on January 30, 2015, PDVSA paid $30 million into a bank account with Commerzbank. Commerzbank then

5

paid $10 million to Defendant Ruperti as a commission into a Sparkasse Bank Account. Commerzbank stated that this commission payment was in settlement of LAIL and OTS's claims.

25. The remaining PDVSA Proceeds were paid by installments totalling $167.6 million to Maroil's Sparkasse Bank Account, with the balance of $62 million to be paid by installments to Intercontinental View, Inc. of Panama ("Intercontinental"). The Defendants purportedly assigned certain unspecified claims, likely some claims belonging to LAIL and/or OTS against PDVSA, to Intercontinental. Under the terms of the agreement with PDVSA, all of the PDVSA Proceeds were paid no later than May 30, 2015.

26. The Defendants actively and fraudulently concealed from LAIL, HS3's agent, and HS3 the PDVSA Settlement and the payments of the PDVSA Proceeds, and misappropriated at least $177.6 million.

27. Defendant Ruperti falsely represented to LAIL on several occasions between February and May 2015, that a settlement with PDVSA had not yet been reached.

28. Dan Sargeant and Defendant Ruperti also purportedly met at the Four Seasons Hotel in Geneva on June 1, 2015. In the course of the meeting, Ruperti falsely represented to Dan Sargeant that a settlement with PDVSA had not yet been reached.

29. On or about October 8, 2015, Ruperti again purportedly represented to LAIL, that a settlement with PDVSA had not yet been reached.

30. In or about January 2016, Ruperti again purportedly represented to LAIL, that a settlement with PDVSA had not yet been reached.

31. In 2017, LAIL filed its own action in London ("London Litigation") against Defendants Maroil and Sea Pioneer seeking recovery of the PDVSA Proceeds.

32. In the London Litigation, LAIL has received security for $60.8 million in lieu of continuing a freezing order made by the London court, demonstrating initial merit in LAIL's position. As part of the freezing order application, LAIL alleged that some of the proceeds from the PDVSA Settlement were dissipated at least in part.

### HS3's Direct Claims Against Defendants

33. HS3 has claims against Maroil, SPSC, and Ruperti given his status as a 25% owner of LAIL at the time the fraud and misappropriation took place. Nearly four months after the PDVSA Settlement was consummated, in April 2015, HS3, unaware of the Defendants' fraud, agreed to surrender his interest in LAIL for no value as part of a separation agreement with the other 75% shareholders relative to unrelated issues and disputes (the "Settlement Agreement").

34. Defendants perpetrated a fraud on LAIL and HS3 beginning no later than December 2014, while HS3 was a LAIL shareholder, by fraudulently concealing from HS3 and LAIL that the Defendants had received funds totalling $10 million from Commerzbank and $167.6 million from PDVSA, in connection with the PDVSA Settlement.

35. In the absence of the Defendants' fraud in concealing the PDVSA Settlement and the misappropriation of the PDVSA Proceeds, LAIL and HS3 would have known of the $177.6 million liquidated value of LAIL's PDVSA claims and the entitlement to the PDVSA Proceeds.

36. Instead, HS3, unaware of the Defendants' fraud and misrepresentations to his agents at LAIL, surrendered his interest in LAIL for essentially zero value. Had HS3 been aware of the $177.6 million liquidated value of LAIL's PDVSA claims and the entitlement to the PDVSA Proceeds, he would not have surrendered his interest in LAIL without adequate consideration for his 25% stake of the $177.6 million liquidated value of LAIL's PDVSA claims.

37. As a direct and proximate result of the Defendants' fraud and concealment, and the active misrepresentations made to HS3's agents, HS3 was damaged. At the time HS3 surrendered his LAIL shares, HS3 had a vested property interest in the PDVSA Proceeds which the Defendants misappropriated.

38. Had the Defendants not fraudulently concealed the PDVSA Settlement, and the misappropriation of the PDVSA Proceeds, HS3 would have received his rightful and vested share of the PDVSA Proceeds and would not have relinquished his 25% interest in LAIL for zero value.

## COUNT I: FRAUD

39. Plaintiff realleges and incorporates paragraphs 1 through 38 above, as if set forth fully herein.

40. Defendants fraudulently concealed or failed to disclose material facts which they had a duty to disclose and of which they knew Plaintiff was unaware.

41. Defendants repeatedly represented the status of the PDVSA Settlement prior to the Settlement Agreement.

42. Defendants misrepresented that there was no PDVSA Settlement when in fact, the PDVSA Settlement was finalized and Defendants had already been paid in whole or part the PDVSA Settlement proceeds.

43. The PDVSA Settlement was a material fact for Plaintiff in negotiating the Settlement Agreement.

44. Defendants intended that Plaintiff, as a shareholder of LAIL, rely on the misrepresentation as to the status of the PDVSA Settlement.

45. Plaintiff justifiably relied on Defendants' representations as to the status of the PDVSA Settlement when negotiating the Settlement Agreement, to his detriment.

46. Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

47. Plaintiff has suffered damages from Defendants' fraudulent conduct.

48. Based on the foregoing, Defendants are liable to Plaintiff for the true value of the LAIL shares at the time of the Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT II: AIDING AND ABETTING FRAUD

49. Plaintiff realleges and incorporates paragraphs 1 through 38 above, as if set forth fully herein.

50. Plaintiff was defrauded through the concealment of the PDVSA Settlement.

51. Defendants had actual or constructive knowledge of the PDVSA Settlement and the fact that its concealment acted to defraud the shareholders of LAIL, including Plaintiff.

52. Defendants materially assisted the fraud against Plaintiff by not disclosing the PDVSA Settlement despite being asked numerous times by Plaintiff's agents and acting contrary to their duty to disclose the PDVSA Settlement.

53. Plaintiff has suffered damages from Defendants' conduct.

54. Based on the foregoing, Defendants are liable to Plaintiff for the true value of the LAIL shares at the time of the Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT III: CONCEALMENT

55. Plaintiff realleges and incorporates paragraphs 1 through 38 above, as if set forth fully herein.

56. Defendants had actual knowledge of the PDVSA Settlement.

57. Defendants suppressed the knowledge of the PDVSA Settlement intending that Plaintiff would act on Defendants' suppression of the PDVSA Settlement.

58. Defendants had a duty to disclose the truth of the PDVSA Settlement.

59. Defendants had a strong economic motivation to keep the proceeds of the PDVSA Settlement and conceal the truth of the PDVSA Settlement from Plaintiff as an agent of LAIL and other agents of LAIL who were also agents of Plaintiff.

60. Plaintiff justifiably relied on Defendants' representations as to the status of the PDVSA Settlement when negotiating the Settlement Agreement.

61. Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

62. Plaintiff has suffered damages from Defendants' conduct.

63. Based on the foregoing, Defendants are liable to Plaintiff for the true value of the LAIL shares at the time of the Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT IV: UNJUST ENRICHMENT

64. Plaintiff realleges and incorporates paragraphs 1 through 38 above, as if set forth fully herein.

65. At all times material, a benefit was conferred upon the Defendants, specifically, the receipt of the funds rightfully belonging to LAIL and HS3, as a shareholder of LAIL.

66. At all times material, the Defendants either requested a benefit or knowingly and voluntarily accepted a benefit.

67. Under the circumstances, it would be inequitable for the Defendants to retain the benefit of the funds without paying value thereof.

68. Plaintiff has suffered substantial injury due to Defendants' inequitable conduct and there is no adequate legal remedy.

69. Based on the foregoing, Defendants are liable to Plaintiff for the amount unjustly received.

## COUNT V: NEGLIGENT MISREPRESENTATION

70. Plaintiff realleges and incorporates paragraphs 1 through 38 above, as if set forth fully herein.

71. Defendants concealed or failed to disclose certain material facts which they had a duty to disclose and of which they knew Plaintiff HS3 was unaware.

72. Specifically, Defendants concealed or failed to disclose that there was no PDVSA Settlement when in fact, the PDVSA Settlement was finalized and Defendants had already been paid in whole or part the PDVSA Settlement proceeds.

73. The PDVSA Settlement was a material fact for Plaintiff in negotiating the Settlement Agreement.

74. Plaintiff justifiably relied on Defendants' representations as to the status of the PDVSA Settlement when negotiating the Settlement Agreement, to his detriment.

75. Defendants intended for Plaintiff to act in reliance on their misrepresentations.

76. Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

77. Plaintiff justifiably relied upon Defendants' misrepresentations and has suffered damages from Defendants' fraudulent conduct.

78. Based on the foregoing, Defendants are liable to Plaintiff for the true value of the LAIL shares at the time of the Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT VI: CIVIL CONSPIRACY

79. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 38 above as if set forth herein in full.

80. Defendants conspired and agreed to commit the intentional misconduct and overt acts alleged in Counts I and II.

81. Specifically, the Defendants conspired and agreed to fail to disclose certain material facts which they had a duty to disclose and of which they knew Plaintiff HS3 was unaware.

82. Plaintiff has suffered damages from Defendants' conduct.

83. The acts in furtherance of the conspiracy were not done in good faith or in a manner that could reasonably have been believed to have been in the best interests of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendants as follows:

(a) That the Court enter judgment for Plaintiff on all claims for relief asserted in the Complaint;

(b) That the Court award Plaintiff damages in an amount to be determined at trial with interest at the legal rate;

(c) That the Court award Plaintiff restitution in an amount to be determined at trial with interest at the legal rate;

(d) That the Court assess all costs against Defendants;

(e) That the Court award Plaintiff pre- and post-judgment interest as applicable; and

(f) Any other relief this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: September 25, 2017

Respectfully Submitted,

*/s/ Gregory W. Coleman*
Gregory W. Coleman
Florida Bar No. 846831
**CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 842-2820
Facsimile: (561) 844-6929
gcoleman@lawclc.com
sdigangi@lawclc.com
cwoodward@lawclc.com

Christopher M. Kise
Florida Bar No. 855545
ckise@foley.com
Melissa B. Coffey
Florida Bar No. 84090
mcoffey@foley.com
Joshua M. Hawkes
Florida Bar No. 112539
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

*Attorneys for Harry Sargeant, III*

13