## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No: 9:17-cv-81070-BB

HARRY SARGEANT, III,

      Plaintiff,

v.

MAROIL TRADING, INC.,
SEA PIONEER SHIPPING CORPORATION,
and
WILMER RUPERTI PEDROMO, individually,

      Defendants,

and

LATIN AMERICAN INVESTMENTS, LTD.,          **JURY TRIAL DEMANDED**

      Intervenor.

_____/

## AMENDED COMPLAINT

      Plaintiff, Harry Sargeant, III, ("HS3") files this Amended Complaint against Defendants, Maroil Trading Inc. ("Maroil"), Sea Pioneer Shipping Corporation ("SPSC"), and Wilmer Ruperti Perdomo, also known as Wilmer Ruperti ("Ruperti") for fraud, aiding and abetting fraud, concealment, unjust enrichment, civil conspiracy, and negligent misrepresentation, and against Intervenor Latin American Investments, Ltd. ("LAIL") for breach of a settlement agreement and states as follows:

## SUMMARY OF THE ACTION

      1.    This matter involves the assertion of civil fraud and other claims against the Defendants.  The Plaintiff, has been deprived and defrauded out of more than $40 million by the Defendants' conduct.  The claims arise out of HS3's relinquished ownership interest in LAIL.

2.      The Defendants and LAIL had several joint ventures with each other to carry out shipping contracts with PDVSA Petroleo, S.A. ("PDVSA").

3.      PDVSA failed to perform on the shipping contracts, and LAIL and the Defendants asserted claims against PDVSA in 2011 and 2012.

4.      In 2014, LAIL nominated the Defendants to negotiate a settlement with PDVSA with respect to all claims LAIL had asserted against PDVSA.  Unbeknownst to HS3, the Defendants secretly agreed with PDVSA to settle all claims on behalf of LAIL in December 2014 (the "PDVSA Settlement").  The Defendants then arranged for the proceeds of the PDVSA Settlement, approximately $177.6 million (the "PDVSA Proceeds"), to be paid not to LAIL, but rather to themselves and others.

5.      As of and from December 2014, LAIL was entitled to receive the PDVSA Proceeds.  As of and from December 2014, the PDVSA Proceeds constituted a valuable, current asset of LAIL.  But, the Defendants' fraudulent concealment and misappropriation deprived LAIL and HS3, of the PDVSA Proceeds.  As discussed below, HS3 is harmed individually because in April 2015, HS3 relinquished his LAIL shares for insufficient value in connection with a settlement agreement.  LAIL and the other LAIL shareholders were not harmed by HS3 relinquishing his LAIL shares for insufficient value.

6.      The Defendants actively concealed from HS3's agents the PDVSA Settlement and the misappropriation of the PDVSA Proceeds.  At no point in time before March 2017 did HS3 learn of the PDVSA Settlement, the PDVSA Proceeds, and/or the Defendants' fraudulent conduct.

7.      Meanwhile, LAIL discovered the Defendants' fraudulent conduct through surreptitious methods, which involved exchanging "personal material relating to" HS3 "of a

sensitive personal nature" for information regarding Defendants' fraud in direct violation of LAIL's promise to HS3 in a settlement agreement not to "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage [HS3] in any manner whatsoever."

## THE PARTIES

8.      HS3 is a citizen and resident of Palm Beach County, Florida, United States of America.  At all times herein material, HS3 owned a 25% interest in LAIL.

9.      Maroil is a company incorporated under the laws of Panama and headquartered out of World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama City, Republic of Panama.  Maroil's registered Resident Agents are Arias, Fabrega & Fabrega (AF&F), whose address is PH ARIFA, 10th Floor, West Boulevard, Santa Maria Business District, P.O. Box 0816-01098, Panama, Republic of Panama.

10.      SPSC is a company incorporated under the laws of Panama and headquartered out of World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama City, Republic of Panama.

11.      Ruperti is a Venezuelan national whose last known residence was Edificio Aldaba, 8TA Transversal de los Palos Grandes, Municipo Chacao, Venezuela.  Ruperti controls both Maroil and SPSC.

12.      Ruperti has substantial and not isolated contacts within the Southern District of Florida, including significant business contacts.  Ruperti also owns, or has owned at relevant times herein, real estate in the Southern District of Florida.  Ruperti also controlled at least one Florida company, Ruperti Management, LLC, at the time of the shipping contracts between LAIL and Ruperti's companies, which are more fully described below.

3

13.     LAIL is a company incorporated in the Isle of Man, currently owned by Daniel Sargeant, James Sargeant, and Harry Sargeant, Jr. in equal shares.  At all times material herein, HS3 was also an equal shareholder in LAIL, until he relinquished his 25% interest in LAIL for insufficient value.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action arising under Florida law and complete diversity of citizenship exists between the Plaintiff and the Defendants and Intervenor.  Specifically, Plaintiff, is a citizen of Florida and Defendants and Intervenor are all citizens of or incorporated in foreign nations.  The Defendants and the Intervenor are not domiciled in Florida.

15.     The amount in controversy in this suit exceeds $75,000 exclusive of interests and costs as to the claims against the Defendants and Intervenor.

16.     This Court has jurisdiction over the Defendants because Defendants' conduct as set forth herein harmed, and were aimed at, Plaintiff, who resides, conducts business, and relied on the misrepresentations at issue in Florida.  Moreover, Ruperti has substantial and not isolated contacts in the Southern District of Florida relevant to the allegations herein, and Defendants, collectively, engaged in conduct in the Southern District of Florida relevant to the transactions and occurrences set forth herein.

17.     The Court has jurisdiction over Intervenor LAIL because LAIL voluntarily submitted itself to the jurisdiction of this Court by intervening. [ECF No. 10]

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and 28

U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action.

## LAIL and the PDVSA Contracts

19.     At all times herein material, LAIL was owned by HS3 (25%), and Harry Sargeant, Jr., Daniel Sargeant, and James Sargeant (collectively 75%), who at all times herein material, were Florida residents and conducted certain of LAIL's business out of an office in Florida.

20.     At all times herein material, HS3 was the primary interlocutor between LAIL, its lenders, and its operating subsidiaries.  HS3 was responsible for coordinating all commercial activities of LAIL and its operating subsidiaries, including without limitation as regards to matters associated with the Defendants.  (Affidavit of Andrew Preston attached as **Exhibit 1** at ¶¶ 180, 181, 192) ("Until that point, business between LAIL and Maroil had been conducted more by way of gentlemen's agreements between Harry Sargeant III and Wilmer Ruperti.") ("all monies paid by PDVSA under or in connection with such contracts were to accrue to the JV ship-owning companies concerned, and were not to be retained by the Defendants or other Maroil entities concerned, were reached or confirmed, orally and informally, in discussions between Harry Sargeant III and Wilmer Ruperti").

21.     Prior to the Defendants' fraud, LAIL had entered into certain shipping contracts with PDVSA involving four tanker ships – *Leander*, *Hero 1*, *Polar*, and *Alloro*.  LAIL and Defendant Maroil were equal shareholders in joint venture companies that controlled the tanker ships ("JV Companies").  For *Leander* and *Hero 1*, a third company, Oceanic Trans Shipping, Est. ("OTS"), was also an equal shareholder in the respective joint venture companies.  The tanker ships were on charter to PDVSA through the Defendants or companies controlled by the Defendants.

22.     The shipping contracts with PDVSA were entered into in the during the years of 2004 to 2006, and possibly later, and were active at least into 2008.

23.     Disputes with PDVSA over the shipping contracts arose.  In August 2011, two of the JV Companies, for the *Leander* and *Hero 1*, filed an arbitration claim for $106.5 million against PDVSA for failure to nominate or perform the minimum number of shipments required under contracts of affreightment held with PDVSA (the "First PDVSA Arbitration").

24.     In August 2012, the remaining JV Companies, *Alloro* and *Polar*, and companies related to two more tanker ships controlled in part by Ruperti, *General Zamora* and *Alimirante Brion*, wrote a separate claim letter to PDVSA for $580 million.

25.     During this time, Maroil reached out through agents in Florida to negotiate a stay of the disputes between LAIL and Defendants.  Exhibit 1 at ¶ 78 ("In January 2013, I received an email from Mr Mooney in which he set out some points he had discussed with Mr Mendia, Maroil's Miami lawyer. Mr Mooney stated that '[p]*reliminary discussions have got to a level with PDV's senior counsel that Maroil believes a "stay" should be put on proceedings with the Tribunal [i.e. the First PDVSA Arbitration] . . . to allow formal negotiations to take place with a view to finding a settlement to the case*'.") (citations omitted).  Indeed, Defendants often met in Florida to discuss matters leading up to and involving the allegations at issue in this Complaint. *See*  Exhibit 1 at ¶ 85 ("Mr Ruperti had suggested a meeting in Miami on Wednesday 8 January 2014,").

26.     In April 2014, Commerzbank Aktiengesellschaft ("Commerzbank"), the bank holding the mortgage and other security for *Leander*, *Hero 1*, and *Polar*, filed its own arbitration as assignee under some of the PDVSA contracts (the "Second PDVSA Arbitration").

6

27.     Because PDVSA had not formally responded to any of the claims against it, negotiation was seen as the only way to secure any value from the claims against PDVSA.  In May 2014, LAIL authorized the Defendants to pursue a settlement with PDVSA related to the First PDVSA Arbitration.

28.     The authorization for Defendants to negotiate on behalf of LAIL was signed and agreed to in Miami, Florida. Exhibit 1 at ¶ 88 ("The Second Mandate and Board Resolutions were signed by all relevant parties in early May 2014, including Mr Ruperti. Mr Sargeant, Mr Mooney and Mr Ruperti met at the latter's Miami residence on 7 May 2014 and the potential settlement with PDVSA was discussed.") (citations omitted).

29.     In December 2014, PDVSA and the Defendants held secret settlement talks in Caracas, Venezuela.  PDVSA and the Defendants agreed during that meeting to settlement of all of Defendants' and LAIL's outstanding claims, the First and Second PDVSA Arbitrations, and the August 2012 letter of claim.  The settlement agreement with PDVSA was apportioned into a $30 million payment to settle the First and Second Arbitrations, and a $230 million payment to settle the claims related to the August 2012 claim letter.

30.     Each of the Defendants signed the PDVSA Settlement, with Ruperti signing on behalf of Maroil and SPSC. Exhibit 1 at ¶ 129 ("The agreement is also signed by Mr Ruperti, who it appears also signed, separately, on behalf of Maroil and of Sea Pioneer. Accordingly, it may be that, on the true construction of the agreement, Mr Ruperti is also personally a party to the agreement.").

31.     Pursuant to the settlement of the First and Second PDVSA Arbitrations, on January 30, 2015, PDVSA paid $30 million into a bank account with Commerzbank. Commerzbank then paid $10 million to Defendant Ruperti and/or SPSC as a commission into a

Sparkasse Bank Account.  Commerzbank stated that this commission payment was in settlement of LAIL and OTS's claims.

32.    The remaining PDVSA Proceeds were paid by installments totalling $167.6 million to Maroil's Sparkasse Bank Account, with the balance of $62 million to be paid by installments to Intercontinental View, Inc. of Panama ("Intercontinental").  The Defendants purportedly assigned certain unspecified claims, likely some claims belonging to LAIL and/or OTS against PDVSA, to Intercontinental.  Under the terms of the agreement with PDVSA, all of the PDVSA Proceeds were paid no later than May 30, 2015.

33.    The Defendants actively and fraudulently concealed from LAIL, HS3's agent, and HS3 the PDVSA Settlement and the payments of the PDVSA Proceeds, and misappropriated at least $177.6 million.

34.    Defendant Ruperti falsely represented to LAIL, and to HS3 as LAIL's representatives were agents for HS3, on purportedly several occasions between February and May 2015, that a settlement with PDVSA had not yet been reached.

35.    Daniel Sargeant and Defendant Ruperti also purportedly met at the Four Seasons Hotel in Geneva on June 1, 2015.  In the course of the meeting, Ruperti falsely represented to Daniel Sargeant that a settlement with PDVSA had not yet been reached.

36.    On or about October 8, 2015, Ruperti again purportedly represented to LAIL, and to HS3 as LAIL's representatives were agents for HS3, that a settlement with PDVSA had not yet been reached.

37.    In or about January 2016, Ruperti again purportedly represented to LAIL, and to HS3 as LAIL's representatives were agents for HS3, that a settlement with PDVSA had not yet been reached.

8

38.     In 2017, LAIL filed its own action in London ("London Litigation") against Defendants Maroil and Sea Pioneer seeking recovery of the PDVSA Proceeds.  It was not until after the London Litigation was filed that HS3 found out about the Defendants' misrepresentations.

39.     Defendants intended for their fraud to reach into Florida to LAIL's shareholders, including HS3, all of whom lived in Florida at the time the fraud was committed.

### HS3's Direct Claims Against Defendants

40.     HS3 has claims against Maroil, SPSC, and Ruperti given his status as a 25% owner of LAIL at the time the fraud and misappropriation took place.  Nearly four months after the PDVSA Settlement was consummated, in April 2015, HS3, unaware of the Defendants' fraud, agreed to surrender his interest in LAIL for insufficient value as part of a separation agreement with the other 75% shareholders relative to unrelated issues and disputes in connection with a bankruptcy proceeding (the "Sargeant Settlement Agreement" attached as **Exhibit 2**).[1]

41.     Defendants perpetrated a fraud on LAIL and HS3 beginning no later than December 2014, while HS3 was a LAIL shareholder, by fraudulently concealing from HS3 and LAIL that the Defendants had received funds totalling $10 million from Commerzbank and $167.6 million from PDVSA, in connection with the PDVSA Settlement.

42.     In the absence of the Defendants' fraud in concealing the PDVSA Settlement and the misappropriation of the PDVSA Proceeds, LAIL and HS3 would have known of the $177.6 million liquidated value of LAIL's PDVSA claims and the entitlement to the PDVSA Proceeds.

---

[1] The value conferred to HS3 in the Sargeant Settlement Agreement did not include any separable amount for LAIL. HS3 controlled secured and unsecured claims in the bankruptcy proceeding with a value in excess of $78 million.

43.     Instead, HS3, unaware of the Defendants' fraud and misrepresentations to his agents at LAIL, surrendered his interest in LAIL for essentially zero value.  Had HS3 been aware of the $177.6 million liquidated value of LAIL's PDVSA claims and the entitlement to the PDVSA Proceeds, he would not have surrendered his interest in LAIL without adequate consideration for his 25% stake of the $177.6 million liquidated value of LAIL's PDVSA claims.

44.     As a direct and proximate result of the Defendants' fraud and concealment, and the active misrepresentations made to HS3's agents, HS3 was damaged.  At the time HS3 surrendered his LAIL shares, HS3 had a vested property interest in the PDVSA Proceeds which the Defendants misappropriated.

45.     Had the Defendants not fraudulently concealed the PDVSA Settlement, and the misappropriation of the PDVSA Proceeds, HS3 would have received his rightful and vested share of the PDVSA Proceeds and would not have relinquished his 25% interest in LAIL for insufficient value.

**LAIL's Participation in the Sargeant Settlement Agreement
and Provision of Personal, Sensitive Material Regarding HS3**

46.     As mentioned above, HS3 relinquished his shares in LAIL as part of the Sargeant Settlement Agreement.  LAIL signed and was a party to the Sargeant Settlement Agreement. Exhibit 2 at 1 (defining parties to include LAIL), 15 (reflecting signature of Harry Sargeant, Jr. signing on behalf of LAIL).

47.     LAIL agreed to the following provision in the Sargeant Settlement Agreement: "The Parties agree that none of them shall make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever."  Exhibit 2 at 10.

10

48.     The Sargeant Settlement Agreement was signed on April 18, 2015 and filed with the Bankruptcy Court for the Southern District of Florida on April 30, 2015.  Exhibit 2 at 22.

49.     Only a few months after the Sargeant Settlement Agreement, in August 2015, Daniel Hall of Focus Intelligence Ltd. (a litigation funder affiliated with Burford Capital LLC) approached Daniel Sargeant of LAIL indicating that Hall might have some material of interest regarding Ruperti, and requested personal information related to HS3 in return.  Exhibit 1 at ¶¶ 151-152.

50.     Hall needed the personal information "to trace assets of [HS3] (Mr Daniel [Sargeant's] brother) in satisfaction of an unpaid Floridian judgment," and was trying to take advantage of a known "rift between the Sargeant family and [HS3]."  Exhibit 1 at ¶ 151.  Hall knew of the material Daniel Sargeant had because of discussions that predated the Sargeant Settlement Agreement, in January 2015. *Id.*

51.     After an initial disclosure of documents from Hall to Daniel Sargeant on October 6, 2016,

> [Daniel] Sargeant contacted Mr Hall and explained that he was particularly looking for copies of any documents between Mr Ruperti and PDVSA mentioning the VLCCs [*i.e.*, the Very Large Crude Carriers that were subject to the joint ventures between LAIL and the Defendants]. Mr Hall stated that he did have such documents. At the same time, Mr Hall maintained his request for copies of the personal material relating to [HS3]. [Daniel] Sargeant made arrangements to provide that material to Mr Hall which, [Daniel] Sargeant informs me [Andrew Preston, LAIL's solicitor in the London Litigation], is of a sensitive personal nature and is entirely unrelated to these proceedings [*i.e.*, the London Litigation].

Exhibit 1 at ¶ 153.

52.     LAIL acknowledges that Daniel Sargeant acted on behalf of LAIL when Daniel Sargeant disclosed the documents to Daniel Hall in October 2016.  Exhibit 1 at ¶ 148 ("It is my firm belief that had the New Documents [*i.e.*, the documents received from Hall] not been

brought to the attention of LAIL by a third party, LAIL would still be unaware of the settlements which were agreed and the payments which were made almost two years ago.").

53.     Daniel Sargeant, on behalf of LAIL, provided Hall this material of a "sensitive personal nature" despite LAIL's express agreement in the Sargeant Settlement Agreement not to "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever," which resulted in damage including reputational harm and increased litigation expense to HS3.

## COUNT I (AGAINST DEFENDANTS): FRAUD

54.     Plaintiff realleges and incorporates paragraphs 1 through 45 above, as if set forth fully herein.

55.     Defendants fraudulently concealed or failed to disclose material facts which they had a duty to disclose and of which they knew Plaintiff was unaware.

56.     Defendants repeatedly misrepresented the status of the PDVSA Settlement prior to the Sargeant Settlement Agreement to HS3's agents.

57.     Defendants misrepresented that there was no PDVSA Settlement when in fact, the PDVSA Settlement was finalized and Defendants had already been paid in whole or part the PDVSA Settlement proceeds.

58.     Defendants intended to induce Plaintiff, as a shareholder of LAIL, to rely on Defendants' misrepresentations regarding the PDVSA Settlement.

59.     The PDVSA Settlement was a material fact for Plaintiff in negotiating the Sargeant Settlement Agreement.

60.     Defendants intended that Plaintiff, as a shareholder of LAIL, rely on the misrepresentation as to the status of the PDVSA Settlement.

61.     Plaintiff justifiably relied on Defendants' misrepresentations as to the status of the PDVSA Settlement when negotiating the Sargeant Settlement Agreement, to his detriment.

62.     Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

63.     Plaintiff has suffered damages from Defendants' fraudulent conduct.

64.     Based on the foregoing, Defendants are liable to Plaintiff for the true value of Plaintiff's LAIL shares at the time of the Sargeant Settlement Agreement accounting for the value of the PDVSA Settlement.

## <u>COUNT II (AGAINST DEFENDANTS): AIDING AND ABETTING FRAUD</u>

65.     Plaintiff realleges and incorporates paragraphs 1 through 45 above, as if set forth fully herein.

66.     Plaintiff was defrauded through the concealment of the PDVSA Settlement.

67.     Defendants had actual or constructive knowledge of the PDVSA Settlement and the fact that its concealment acted to defraud the shareholders of LAIL, including Plaintiff.

68.     Defendants materially assisted the fraud against Plaintiff by not disclosing the PDVSA Settlement despite being asked numerous times by Plaintiff's agents and acting contrary to their duty to disclose the PDVSA Settlement.

69.     Defendants Maroil and SPSC received in their bank accounts fraudulently obtained funds from PDVSA for the private use of each other and for Defendant Ruperti.

70.     Plaintiff has suffered damages from Defendants' conduct.

71.     Based on the foregoing, Defendants are liable to Plaintiff for the true value of Plaintiff's LAIL shares at the time of the Sargeant Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT III (AGAINST DEFENDANTS): CONCEALMENT

72.     Plaintiff realleges and incorporates paragraphs 1 through 45 above, as if set forth fully herein.

73.     Defendants had actual knowledge of the PDVSA Settlement.

74.     Defendants suppressed the knowledge of the PDVSA Settlement intending that Plaintiff would act on Defendants' suppression of the PDVSA Settlement.

75.     Defendants had a duty to disclose to Plaintiff the truth of the PDVSA Settlement.

76.     Defendants had a strong economic motivation to keep the proceeds of the PDVSA Settlement and conceal the truth of the PDVSA Settlement from Plaintiff as an agent of LAIL and other agents of LAIL who were also agents of Plaintiff.

77.     Plaintiff justifiably relied on Defendants' representations as to the status of the PDVSA Settlement when negotiating the Sargeant Settlement Agreement.

78.     Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

79.     Plaintiff has suffered damages from Defendants' conduct.

80.     Based on the foregoing, Defendants are liable to Plaintiff for the true value of Plaintiff's LAIL shares at the time of the Sargeant Settlement Agreement accounting for the value of the PDVSA Settlement.

## COUNT IV (AGAINST DEFENDANTS): UNJUST ENRICHMENT

81.     Plaintiff realleges and incorporates paragraphs 1 through 52 above, as if set forth fully herein.

82.     At all times material, a benefit was conferred upon the Defendants, including the receipt of the funds rightfully belonging to Plaintiff, as a shareholder of LAIL, and the ability to negotiate with PDVSA on behalf of LAIL that resulted in the PDVSA Settlement.

83.     At all times material, the Defendants either requested a benefit or knowingly and voluntarily accepted a benefit.

84.     Under the circumstances, it would be inequitable for the Defendants to retain the benefit of the funds rightfully belonging to Plaintiff without paying value thereof.

85.     Plaintiff has suffered substantial injury due to Defendants' inequitable conduct and there is no adequate legal remedy.

86.     Based on the foregoing, Defendants are liable to Plaintiff for the amount unjustly received that rightfully belonged to Plaintiff.

**COUNT V (AGAINST DEFENDANTS): NEGLIGENT MISREPRESENTATION**

87.     Plaintiff realleges and incorporates paragraphs 1 through 45 above, as if set forth fully herein.

88.     Defendants concealed or failed to disclose certain material facts which they had a duty to disclose and of which they knew Plaintiff was unaware.

89.     Specifically, Defendants concealed or failed to disclose that there was no PDVSA Settlement when in fact, the PDVSA Settlement was finalized and Defendants had already been paid in whole or part the PDVSA Settlement proceeds.

90.     The PDVSA Settlement was a material fact for Plaintiff in negotiating the Sargeant Settlement Agreement.

91.     Plaintiff justifiably relied on Defendants' representations as to the status of the PDVSA Settlement when negotiating the Sargeant Settlement Agreement, to his detriment.

92.     Defendants intended for Plaintiff to act in reliance on their misrepresentations.

93.     Plaintiff did not discover and could not discover through the exercise of reasonable diligence the truth of the PDVSA Settlement.

94.     Plaintiff justifiably relied upon Defendants' misrepresentations and has suffered damages from Defendants' fraudulent conduct.

95.     Based on the foregoing, Defendants are liable to Plaintiff for the true value of Plaintiff's LAIL shares at the time of the Sargeant Settlement Agreement accounting for the value of the PDVSA Settlement.

**COUNT VI (AGAINST DEFENDANTS): CIVIL CONSPIRACY**

96.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 45 above as if set forth herein in full.

97.     Defendants conspired and agreed to commit the intentional misconduct and overt acts alleged in Counts I and II.

98.     Specifically, the Defendants conspired and agreed to fail to disclose certain material facts which they had a duty to disclose and of which they knew Plaintiff was unaware.

99.     Plaintiff has suffered damages from Defendants' conduct.

100.    The acts in furtherance of the conspiracy were not done in good faith or in a manner that could reasonably have been believed to have been in the best interests of Plaintiff.

101.    Based on the foregoing, Defendants are liable to Plaintiff for the true value of Plaintiff's LAIL shares at the time of the Sargeant Settlement Agreement accounting for the value of the PDVSA Settlement.

**COUNT VI (AGAINST INTERVENOR):
BREACH OF SETTLEMENT AGREEMENT**

16

102.    Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 53 above as if set forth herein in full.

103.    Intervenor LAIL expressly bound itself to not "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage [Plaintiff] in any manner whatsoever."

104.    Instead, LAIL breached this promise and released "copies of personal material relating to" Plaintiff "of a sensitive personal nature [that were] entirely unrelated to" LAIL's claims in the London Litigation.

105.    LAIL's breach of the Sargeant Settlement Agreement caused damage to Plaintiff including reputational harm..

106.    Based on the foregoing, Intervenor LAIL is liable to Plaintiff for damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against the Defendants as follows:

(a)     That the Court enter judgment for Plaintiff on all claims for relief asserted in the Complaint;

(b)     That the Court award Plaintiff damages in an amount to be determined at trial with interest at the legal rate;

(c)     That the Court award Plaintiff restitution in an amount to be determined at trial with interest at the legal rate;

(d)     That the Court assess all costs against Defendants and/or Intervenor;

(e)     That the Court award Plaintiff pre- and post-judgment interest as applicable; and

(f)     Any other relief this Court deems just and proper.

17

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  November 22, 2017

Respectfully Submitted,

*/s/ Gregory W. Coleman*
*/s/  Joshua M. Hawkes*
Gregory W. Coleman
Florida Bar No. 846831
gcoleman@lawclc.com
**CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 842-2820
Facsimile: (561) 844-6929

Christopher M. Kise
Florida Bar No. 855545
ckise@foley.com
Melissa B. Coffey
Florida Bar No. 84090
mcoffey@foley.com
Joshua M. Hawkes
Florida Bar No. 112539
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

***Attorneys for Harry Sargeant, III***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic mail on November 22, 2017 on all parties of record reflected in the Service List below.

### SERVICE LIST

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456
(305) 374-7580
Fax: (305) 351-2265
mwidom@bilzin.com

Alexander D. Pencu
Christopher J. Major
Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
Fax: (212) 655-3535
adp@msf-law.com
cjm@msf-law.com

*Attorney for Defendants Maroil
Trading, Inc., Sea Pioneer Shipping
Corp., and Wilmer Ruperti Pedromo*

Charles H. Lichtman
Jeffrey S. Wertman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872
clichtman@bergersingerman.com
jwertman@bergersingerman.com

*Attorneys for Intervening Defendants Latin
American Investments, Ltd.*

By: _/s/ Joshua M.  Hawkes_____
Joshua M. Hawkes

19