**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No: 9:17-cv-81070-BLOOM/Hopkins

HARRY SARGEANT, III,

      Plaintiff,

      vs.

MAROIL TRADING, INC., SEA PIONEER
SHIPPING CORPORATION, WILMER
RUPERTI PEDROMO, DANIEL SARGEANT,
DANIEL HALL, and ANDREW PRESTON,

      Defendants,

      and

LATIN AMERICAN INVESTMENTS, LTD.,

      Intervenor.

_____/       **JURY TRIAL DEMANDED**

**SECOND AMENDED COMPLAINT**

Plaintiff, Harry Sargeant, III ("HS3") hereby files this Second Amended Complaint against intervenor, Latin American Investments, Ltd. ("LAIL"), and the defendants, Daniel Sargeant ("DSargeant"), Daniel Hall ("Hall"), and Andrew Preston ("Preston") (collectively the "Defendants"), and states as follows:

**SUMMARY OF THE ACTION**

1.      This is an action seeking injunctive and other equitable relief, compensatory and punitive damages, and asserting violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801 *et seq.*; and claims under Florida law for breach of contract, invasion of privacy, and civil conspiracy.

1

## PARTIES

2.      HS3 is a citizen and resident of Palm Beach County, Florida, United States of America.

3.      LAIL is a company incorporated in the Isle of Man, owned currently by DSargeant, James Sargeant, and Harry Sargeant, Jr. (collectively, the "Sargeant Family") in equal shares. HS3 previously served as a director and 25% shareholder in LAIL.  The other shareholders of LAIL at that time were DSargeant, James Sargeant, and Harry Sargeant, Jr.

4.      DSargeant is a citizen and resident of Boca Raton, Florida.  At all times herein material, DSargeant owned, controlled, and/or managed numerous Sargeant Family owned businesses, including LAIL.

5.      Hall is a citizen and resident of the United Kingdom ("UK"), and is a UK trained solicitor and employee of Burford Capital, LLC.  Hall is formally a director of Focus Intelligence, Ltd., an investigations firm acquired by Burford Capital, LLC in or about 2015.  As used herein, "Burford" shall refer collectively to both Burford Capital, LLC and Focus Intelligence, Ltd., and other affiliates and subsidiaries of Burford Capital, LLC.

6.      Preston is a citizen and resident of the UK.  Preston is a UK trained solicitor currently employed at Clyde & Co., and has served as legal counsel for LAIL and other Sargeant Family businesses.

7.      Nominal defendants Maroil Trading, Inc. ("Maroil") and Sea Pioneer Shipping Corp. ("SPSC") (collectively the "Panamanian Companies") are owned and controlled by Nominal Defendant Wilmer Ruperti Pedromo ("Ruperti"), a Venezuelan businessman (the Panamanian Companies and Ruperti are collectively referred to herein as the "Ruperti Parties").

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over HS3's CFAA claim under 18 U.S.C. § 1030, and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

9.      This Court has subject matter jurisdiction over HS3's SCA claim under 18 U.S.C. § 2701 *et seq*., and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over HS3's state-law claims under CADRA, his invasion of privacy and civil conspiracy tort claims, and the breach of contract claim, all asserted under Florida law, as these claims comprise the same case and controversy as the federal claims under CFAA and SCA.

11.     This Court has personal jurisdiction over LAIL because it submitted itself to the jurisdiction of this Court by voluntary intervention in this action.

12.     This Court has personal jurisdiction over DSargeant as he resides and is domiciled in Palm Beach County, Florida.

13.     This Court has personal jurisdiction over Hall under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Hall conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e*., the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida, and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

14.     This Court has personal jurisdiction over Preston under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Hall conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.*, the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida,

and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

15.     The Court has continuing jurisdiction over the Ruperti Parties pursuant to the order administratively closing the case as to the Ruperti Parties [ECF No. 91].

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Second Amended Complaint occurred in this judicial district.

## HS3 AND THE SARGEANT FAMILY BUSINESSES

17.     From in or about 1990 through 2012, HS3, DSargeant (brother), Harry Sargeant, Jr. (father), and James Sargeant (brother) owned, operated, and were employed by a number of for-profit Sargeant Family business entities engaged in the sale, transport, and distribution of asphalt and related petroleum products and materials (the "Sargeant Family Businesses"). Defendant LAIL was one such business entity.

18.     At all times herein material, the Sargeant Family Businesses were engaged in interstate and foreign commerce.

19.     At all times herein material, the Sargeant Family Businesses maintained a computer server (the "Sargeant Server") located in Florida within this judicial district at 3020 North Military Trail, Boca Raton, in Palm Beach County, Florida.

20.     The Sargeant Server was utilized, *inter alia*, in connection with the operation of a business in Florida within this judicial district and in connection with the conduct of interstate and foreign commerce from within this judicial district.

21.     At all times herein material, HS3 maintained and utilized his own email account on the Sargeant Server, denominated as hsargeantjr@sargeant.net (the "HS3 Email Account").

4

The HS3 Email Account was password protected, and HS3 did not provide the password associated with the HS3 Email Account to any of the Defendants or their representatives or agents.  Access to the Sargeant Server was also password protected.

22.    The HS3 Email Account and the Sargeant Server contained, *inter alia*, 478 separate business, personal, and confidential items belonging to and relating to HS3, including business information, business and personal communications, documents, Microsoft outlook email files, and personal, sensitive photographs and videos ("HS3 Material").  A summary and index of the HS3 Material was produced by counsel for LAIL on January 24, 2018, and a redacted copy of same is attached as **Exhibit A**.

23.    The business information contained within the HS3 Material included certain details and communications regarding HS3's private business ventures, which were unrelated to the Sargeant Family Businesses.  This business information included links to prototype operations of a new steam generator system being developed by one of HS3's businesses, trade articles, and updates on global business operations from employees of HS3's businesses.

24.    The personal information contained within the HS3 Material included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

25.    HS3 never explicitly or implicitly authorized any of the Defendants to access the HS3 Email Account or to access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

26.    The Sargeant Family Businesses had no official or unofficial policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account or to

access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

## THE DEFENDANTS' UNLAWFUL AGREEMENT

27.     In or about August 2016, the Defendants devised a scheme whereby they agreed together to, unlawfully and without authorization, access the HS3 Email Account, and to, unlawfully and without authorization and/or in excess of any authorization, access the Sargeant Server, obtain the HS3 Material, and exchange the HS3 Material for certain other illicit and confidential materials to advance their own individual and mutual interests.  The profit-minded Defendants intentionally agreed to exploit this unauthorized and unlawful access to such materials to reap financial gain.

28.     The Defendants intended for their scheme to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server, which stored/contained the HS3 Email Account, was located and utilized in connection with the operation of a business in Florida.

29.     In or about August 2016, Hall advised DSargeant, LAIL, and Preston that he had access to certain material regarding the Ruperti Parties ("Ruperti Material"), which was of great value to DSargeant, LAIL, and Preston.  Hall knew DSargeant, LAIL, and Preston had been seeking such information as part of efforts to recover tens of millions of dollars they believed the Ruperti Parties had misappropriated.

30.     Hall had access to the Ruperti Material through Burford's relationship with a separate Burford client, Sovcomflot, as the Ruperti Material was disclosed as part of litigation between Ruperti and Sovcomflot.  The Ruperti Material was subject to a confidential settlement between Sovcomflot and Ruperti, and a non-disclosure agreement ("NDA") as part of that

settlement. Hall nonetheless ignored any obligations to Burford client Sovcomflot and/or under the settlement between Sovcomflot and Ruperti and the NDA, and plotted to abuse his access to the Ruperti Material to advance the Defendants' conspiratorial agreement.

31.     At that same time, Hall was engaged as an investigator in a bitter, global feud with HS3 seeking recovery of millions of dollars from HS3 on behalf of a separate Burford client, Mohammed Al-Saleh. As part of those efforts, Hall sought information regarding HS3 that Burford could use to leverage and/or extort HS3 into a payment or settlement. Hall knew he could do so by taking advantage of a known rift between HS3 on the one hand and DSargeant, LAIL, and Preston on the other.

32.     Hall also knew DSargeant, LAIL, and Preston could unlawfully access the HS3 Material, and therefore proposed to provide to them the Ruperti Material in exchange for the HS3 Material.

33.     In or about August 2016, the Defendants agreed together that DSargeant and LAIL would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall. In exchange, the Defendants agreed together that Hall would access the Ruperti Material, disregard the settlement and the NDA between Sovcomflot and Ruperti applicable to the Ruperti Material, and provide the Ruperti Material to DSargeant, LAIL, and Preston, for Preston to use in litigation between LAIL and the Ruperti Parties.

34.     DSargeant, LAIL, and Preston knew they had no authorization to access the HS3 Email Account and lacked authorization or exceeded any authorization they had to access the Sargeant Server, and no authorization to obtain the HS3 Material and/or to provide same to Hall. DSargeant, LAIL, and Preston also knew, or later became aware, that Hall would violate the

Sovcomflot settlement and NDA in order to access and provide to them the Ruperti Material in exchange for the HS3 Material.

35.     On or about October 6, 2016, in furtherance of their agreement, Hall provided to DSargeant, LAIL, and Preston, a portion of the Ruperti Material.

36.     On or about October 6, 2016, and again on or about October 28, 2016, DSargeant and LAIL unlawfully accessed the Sargeant Server and the HS3 Email Account in Florida, and obtained the HS3 Material from the HS3 Email Account.

37.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

38.     On or about March 1, 2017, DSargeant, LAIL, and Preston utilized the Ruperti Material to prepare and file an action against Maroil and SPSC on behalf of LAIL in the High Court of Justice, London (the "London Litigation").

39.     On or about May 5, 2017, the Defendants met in London to discuss, *inter alia*, Hall's request to share in any proceeds from the London Litigation.  Hall advised DSargeant, LAIL, and Preston that, because he and/or Burford may be exposed to liability for the violation of the Sovcomflot settlement and the NDA, and the provision of the Ruperti Material in exchange for the HS3 Material, that he (Hall) should receive compensation from them (DSargeant, LAIL, and Preston).

40.     On or about May 11, 2017, Preston, on behalf of himself, DSargeant, and LAIL, communicated with Hall regarding Hall's request for compensation, and indicated a willingness to consider providing Hall a portion of any recovery from the Ruperti Parties in the London Litigation on the basis that the information Hall provided was of great value to DSargeant/LAIL in advancing that litigation.

41.     On or about July 26, 2017, Preston, on behalf of himself, DSargeant, and LAIL, again communicated with Hall to advise that if a substantial recovery were made in the London Litigation then DSargeant would be happy to sit down with Hall to discuss some form of a success fee.

42.     Preston expressly averred under oath that the Ruperti Material provided the evidence essential to the successful assertion of the claims advanced in the London Litigation. LAIL has now recovered in excess of $30 million from the Ruperti Parties in the London Litigation as a result of the Defendants' unlawful scheme.

<u>COUNT I</u>
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
*Against LAIL and DSargeant*

43.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

44.     At all times herein material, the Sargeant Server and the computers used in the Sargeant Family Businesses constituted "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B), as they were used by the Sargeant Family Businesses to engage in interstate and foreign commerce and communications, including e-mail communications with individuals located out of state and in foreign countries, and to otherwise conduct the Sargeant Family Businesses across state lines, via the internet.

45.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant intentionally accessed the Sargeant Server and one or more of the computers used in the Sargeant Family Businesses and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

46.     The HS3 Material accessed by LAIL and DSargeant was maintained on protected computers within the meaning of 18 U.S.C. § 1030(e)(2)(B).

47.     LAIL and DSargeant were not authorized to access and/or exceeded their authorized access to the protected computers and the HS3 Material.

48.     By engaging in the conduct described above, LAIL and DSargeant intentionally accessed at least one protected computer without authorization or exceeded any authorized access, and thereby obtained information from a protected computer in violation of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

49.     As a result of LAIL and DSargeant engaging in the conduct described above, HS3 suffered damage and LAIL and DSargeant received an unjust benefit and enrichment in the form of the profits derived from the recovery in excess of $30 million in the London Litigation.

50.     LAIL and DSargeant's violations of the CFAA and misuse of the HS3 Material in order to benefit from the London Litigation were inequitable, and it would be inequitable for LAIL and DSargeant to retain such benefit.

51.     As a result of LAIL and DSargeant's violations of the CFAA, 18 U.S.C. § 1030(a)(2)(C), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

52.     WHEREFORE, HS3 asks the Court to enter a judgment against Defendants LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief,

including without limitation, an injunction prohibiting LAIL and DSargeant from disclosing the HS3 Material and requiring that they return all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

## COUNT II
## CONSPIRACY TO VIOLATE THE CFAA
### *Against LAIL, DSargeant, Hall, and Preston*

53.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42, and 44 through 48, above as if herein fully set forth.

54.     In or about August 2016, the Defendants conspired to commit an offense under the CFAA, 18 U.S.C. § 1030(a)(2)(C), and to thereby unlawfully obtain the HS3 Material, all in violation of the CFAA, 18 U.S.C. § 1030(b).

55.     The overt acts committed in furtherance of the Defendants' unlawful conspiracy include, but are not limited to: On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email Account and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

56.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

57.     On or about October 28, 2016, Preston received the Ruperti Materials obtained from Hall in exchange for the HS3 Material and utilized the Ruperti Materials to advance LAIL's position in the London Litigation.

11

58.     On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

59.     The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

60.     By engaging in the conduct herein set forth, the Defendants violated the CFAA, 18 U.S.C. § 1030(b).

61.     As a result of the Defendants' violation of the CFAA, 18 U.S.C. § 1030(b), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

62.     WHEREFORE, HS3 asks the Court to enter a judgment against the Defendants awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief, including without limitation, an injunction prohibiting DSargeant, Preston, Hall, and LAIL from disclosing the HS3 Material and requiring that the return of all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

## COUNT III
## VIOLATION OF THE STORED COMMUNICATIONS ACT
### *Against LAIL and DSargeant*

63.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

64.     At all times herein material, the Sargeant Server was a "facility" through which an electronic communication service was provided, as that term is used under the SCA.

65.     At all times herein material, HS3 maintained and operated the HS3 Email Account on the Sargeant Server.  The Sargeant Server holds all emails until downloaded to a local computer for viewing and once downloaded, maintains backup copies of all emails opened on a local computer.

66.     At all times herein material, the HS3 Material was in "electronic storage" in the above-mentioned facility (the Sargeant Server), as defined under the SCA, 18 U.S.C. § 2510(17).

67.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed without authorization or in excess of any authorization the Sargeant Server and thereby obtained from a facility electronic communications, namely the HS3 Material, while same was in electronic storage in such system, in violation of the SCA, 18 U.S.C. § 2701.

68.     HS3 has been damaged as a result of DSargeant and LAIL's violations of the SCA, 18 U.S.C. § 2701, and is entitled, under 18 U.S.C. § 2707(b), to an award of actual damages, injunctive relief, and to an award of the profits made by DSargeant and LAIL as a result of the violations of the SCA.

69.     WHEREFORE, HS3 asks the Court to enter a judgment against DSargeant and LAIL awarding him (a) HS3's actual damages; (b) DSargeant and LAIL's profits from

misappropriating and disclosing the HS3 Material in violation of the SCA pursuant to 18 U.S.C. § 2707(b)(2); (c) injunctive and other equitable or declaratory relief as may be appropriate, pursuant to 18 U.S.C. § 2707(b)(1), including without limitation, an order prohibiting DSargeant and LAIL from disclosing the HS3 Material and requiring the return all such information in its possession to HS3; (d) punitive damages, pursuant to 18 U.S.C. § 2707(c), for wilfully and intentionally violating the SCA; (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to 18 U.S.C. § 2707(b)(3); and (f) such additional relief that this Court deems fair and equitable.

**COUNT IV**
**VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT**
***Against LAIL and DSargeant***

70.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

71.     At all times herein material, the Sargeant Server constituted a "protected computer" as defined under CADRA, Florida Statutes Section 668.802(6), because it was used in connection with the operation of the Sargeant Family Businesses and stored information, programs or code in connection with the operation of the Sargeant Family Businesses that could be accessed only by employing a technological access barrier (a password).  At all times herein material, the HS3 Email Account was protected with a password authentication system, which constitutes a "technological access barrier" as defined under CADRA, Florida Statutes Section 668.802(7).

72.     At all times herein material, the HS3 Material was stored on the Sargeant Server and constituted information stored in a protected computer.

73.     HS3 is the owner of the HS3 Material, information stored in a protected computer, and used certain HS3 Material in connection with the operation of a business.

74.      On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant knowingly, with intent to cause harm or loss, and without authorization or in excess of any authorization, accessed the Sargeant Server and the HS3 Email Account, and one or more of the computers used in the Sargeant Family Businesses, and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and as a result caused harm or loss, all in violation of CADRA, Florida Statutes Section 668.803(1).

75.     Defendants LAIL and DSargeant committed the acts set forth herein knowingly and with intent to cause "loss" as defined under CADRA, Florida Statutes Section 668.802(5), including intending to profit as a result of their CADRA violations.

76.     Defendants LAIL and DSargeant in fact gained in excess of $30 million in profits as a direct result of their CADRA violations through the recovery in the London Litigation.

77.     HS3 has been damaged by LAIL and DSargeant's violations of CADRA, and is entitled under CADRA, Florida Statutes Section 668.804(1), to recover such damages, to recover LAIL and DSargeant's profits gained as a result of their CADRA violations, to injunctive relief to prevent any future violations of CADRA, and to recovery of the HS3 Material.

78.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages pursuant to Fla. Stat. § 668.04(1)(a); (b) LAIL and DSargeant's profits from violating CADRA that are not included in HS3's actual damages, pursuant to Fla. Stat. § 668.04(1)(b); (c) injunctive and other equitable relief from the Court to prevent a future violation of § 668.803, including without limitation, an order

prohibiting LAIL and DSargeant from further disclosing the HS3 Material; (d) an order requiring LAIL and DSargeant to return the HS3 Material and all copies thereof, pursuant to Fla. Stat. § 668.04(1)(d); (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to Fla. Stat. § 668.04(2), as the prevailing party; and (e) such additional relief that this Court deems fair and equitable.

**COUNT V**
**BREACH OF CONTRACT**
*Against LAIL and DSargeant*

79.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42, as if herein fully set forth.

80.     On or about April 18, 2015, HS3, LAIL, and DSargeant entered into a written contract for the purposes of resolving certain litigation between them and related Sargeant Family and other business entities (the "Sargeant Settlement").  A true and correct copy of the Sargeant Settlement is attached hereto as **Exhibit B** and incorporated herein by reference.

81.     The Sargeant Settlement included, *inter alia*, a provision prohibiting the parties from "mak[ing] any statement, releas[ing] any document or otherwise tak[ing] any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever." (the "Non-disparagement Provision").

82.     At all times herein material, LAIL and DSargeant therefore were contractually bound under the Sargeant Settlement to not "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage [Plaintiff] in any manner whatsoever."  Exhibit B at 19.

83.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant unlawfully accessed the Sargeant Server and the HS3 Email Account, and unlawfully obtained the HS3 Material from that account.

84.     On or about October 28, 2016, LAIL and DSargeant provided the HS3 Material to Hall in direct violation of the Sargeant Settlement Non-disparagement Provision.

85.     LAIL and DSargeant's actions in unlawfully obtaining, and then disclosing to HS3's known adversary and others, the HS3 Material, which included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, were actions that "may or will tend to disparage [HS3] in any manner whatsoever" in violation of the Sargeant Settlement Non-disparagement Provision.

86.     LAIL and DSargeant's actions as set forth herein therefore constitute a direct violation of the Non-disparagement Provision.

87.     HS3 has suffered damage as a result of Defendant LAIL and DSargeant's breach of the Sargeant Settlement Non-disparagement Provision, including, *inter alia*, reputational harm, costs of recovery of the HS3 Material, and increased litigation costs and exposure.

88.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) HS3's reasonable attorney's fees and other litigation costs, as the prevailing party under paragraph 9 of the Sargeant Settlement; and (c) such additional relief that this Court deems fair and equitable.

<u>COUNT VI</u>
**INVASION OF PRIVACY (INTRUSION)**
***Against LAIL and DSargeant***

89.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

90.     The HS3 Email Account contained the HS3 Material, which included extremely sensitive personal information regarding HS3.

91.     HS3 had a reasonable expectation of privacy as to the HS3 Email Account and as to the HS3 Material stored/contained in the HS3 Email Account on the Sargeant Server.  The HS3 Email Account was password protected.  Access to the Sargeant Server was also password protected.  There were no explicit or implicit policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account, the HS3 Material, or the Sargeant Server.

92.     HS3 never explicitly or implicitly authorized the Defendants, the Sargeant Family, the Sargeant Family Businesses, or any of their employees, shareholders, representatives or agents to access the HS3 Email Account or the HS3 Material on the Sargeant Server.

93.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

94.     LAIL and DSargeant's actions in obtaining the HS3 Material, which contained, *inter alia*, extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, and then disclosing the HS3 Material to Hall and others for pecuniary gain, is conduct unacceptable in a civilized community and clearly offensive to any reasonable person.

95.     LAIL and DSargeant's actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

96.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review and disclose the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

## COUNT VII
## INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
### *Against LAIL and DSargeant*

97.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

98.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

99.     The HS3 Material contained, *inter alia*, private and extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

100.     On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

101.     Upon information and belief, Hall, on or about October 28, 2016, and thereafter, further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

102.     The HS3 Material was and is highly personal, private, and sensitive in nature and not of legitimate public interest.

103.     The publication of the HS3 Material as set forth herein would be considered offensive and objectionable and would cause mental distress and injury to a reasonable person having ordinary dealings and sensibilities.

104.     LAIL and DSargeant's unauthorized actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

105.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review, and publicize the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

**COUNT VIII**
**CIVIL CONSPIRACY**
*Against LAIL, DSargeant, Hall and Preston*

106.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42 above as if set forth herein in full.

107.     In or about August, 2016, the Defendants conspired together and agreed to invade HS3's privacy and violate CADRA by unlawfully obtaining, using and publicizing the HS3 Material.

108.     The following overt acts were committed in furtherance of the Defendants' unlawful conspiracy:  On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email

Account in Florida and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of HS3's right to privacy and in violation of CADRA.

109.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

110.     On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

111.     Upon information and belief, Hall on or about October 28, 2016, and thereafter further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

112.     On or about October 28, 2016, Preston received the Ruperti Materials and utilized such materials to advance LAIL's position in the London Litigation.

113.     On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

114.     The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

115.     As set forth herein, certain overt acts in furtherance of the conspiracy took place within this judicial district in Florida.

116.     The Defendants intended for their tortious and unlawful acts to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server was located and utilized in connection with the operation of a business in Florida.

117.    HS3 has suffered damage as a result of the Defendants' unlawful and conspiratorial conduct including, but not limited to, lost profits, economic damages, and reputational harm.

118.    WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because the Defendants wilfully and intentionally conspired to invade HS3's privacy to further their own pecuniary interest; and (c) such additional relief that this Court deems fair and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, HS3 respectfully requests judgment against the Defendants as follows:

(a)     That the Court enter judgment for HS3 on all claims for relief asserted in the Second Amended Complaint;

(b)     That the Court award HS3's actual damages, including lost profits and compensatory, incidental, and consequential damages in an amount to be determined at trial with interest at the legal rate;

(c)     That the Court award HS3 damages in the form of LAIL's profits from misappropriating the HS3 Material, beyond his actual damages, pursuant to Florida Statutes, Sections 668.804(1)(b) and 18 U.S.C. § 2707(c), in an amount to be determined at trial with interest at the legal rate;

(d)     That the Court issue an injunction, or other equitable relief, (1) prohibiting Defendants and any of their agents from disclosing or distributing HS3's personal information to any other person; (2) directing the Defendants and any of their agents to return all HS3 Material back to HS3, deleting all copies thereof on their respective computer systems, and certifying completion to this Court and HS3; and (3) directing the Defendants to disgorge all profits obtained as a result of possession or exchange of the HS3 Material to HS3;

(e)     That the Court award HS3 punitive damages pursuant to 18 U.S.C. § 2707(c) and for Defendants' willful invasion of privacy and unlawful conspiracy;

(f)     That the Court award HS3 his reasonable attorney's fees;

(g)     That the Court assess all costs against Defendants;

(h)     That the Court award HS3 pre- and post-judgment interest as applicable; and

(i)     Any other relief this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  February 20, 2018

Respectfully Submitted,

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@foley.com
Melissa B. Coffey
Florida Bar No. 84090
mcoffey@foley.com
Joshua M. Hawkes
Florida Bar No. 112539
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue, Suite 900
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

Gregory W. Coleman
Florida Bar No. 846831
gcoleman@lawclc.com
**CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 842-2820
Facsimile: (561) 844-6929

Ramon A. Abadin
Florida Bar No. 707988
rabadin@abadinlaw.com
**RAMON A. ABADIN, P.A.**
2333 Ponce de Leon Blvd, Suite 314
Coral Gables, FL 33134
Telephone:  (305) 768-9839
Facsimile: (786) 217-0133

***Attorneys for Harry Sargeant, III***

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic mail on February 20, 2018 on all parties of record reflected in the Service List below.

## SERVICE LIST

Charles H. Lichtman
Jeffrey S. Wertman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872
clichtman@bergersingerman.com
jwertman@bergersingerman.com

*Attorneys for Intervenor-Defendant Latin American Investments, Ltd.*

By:  */s/ Joshua M. Hawkes*
      Joshua M. Hawkes